HOLLAND *v.* ALEXANDER.

Opinion delivered February 21, 1921.

1. DEEDS—DELIVERY.—Where a grantor executes a deed in the absence of the grantee, and has it recorded, this amounts to a delivery where the record shows that the acceptance of the deed would be of advantage to the grantee.

2. DEEDS—EVIDENCE OF MISTAKE.—In a suit by an illegitimate son to restrain a sale of land under his father's mortgage which his father had bought and paid for and taken title to plaintiff, evidence *held* to justify the chancellor's finding that the father bought the land for himself, and that the deed was by mistake made to plaintiff.

Appeal from Mississippi Chancery Court, Chickasawba District; *C. D. Frierson*, Chancellor; affirmed.

STATEMENT OF FACTS.

J. B. Holland, a minor, by his next friend, J. T. Wood, brought this suit in equity against the New England Securities Company and A. G. Little to restrain them from selling, under a mortgage, a tract of land described in the complaint.

The New England Securities Company filed an answer, denying the allegations of the complaint, and also a cross-complaint, in which it asked that Hettie Wood and the administrator of the estate of J. W. Holland, deceased, be made parties. In the cross-complaint it set up the fact that the land had been sold under the power of sale contained in the mortgage and that T. C. Alexander had become the purchaser at the sale.

The prayer of the cross-complaint was that T. C. Alexander's title be quieted as against J. B. Holland, Hettie Wood and the administrator of the estate of J. W. Holland, deceased. The facts set up in the cross-complaint were established by the proof.

The record also shows that J. B. Holland was born on August 15, 1899. The land in controversy comprises forty acres, and on the 16th day of October, 1899, H. P. Davis and wife executed a deed to it to J. B. Holland for the consideration of $1,000. The deed recites a consideration of $1,000 as follows: $160 in hand, paid by J. B. Holland, one note for $340, due and payable on the 15th day of November, 1900, and one note for $100 due and payable on the 15th day of November, 1901, and one note due and payable on the 15th day of November, 1902, for $100, and one note for $100 due and payable on the 15th day of November, 1903, and one note for $100 due and payable on the 15th day of November, 1904, and one and the last note for $100 payable on the 15th day of November, 1905.

J. B. Holland was the illegitimate son of J. W. Holland. During December, 1906, or January, 1907, J. W. Holland applied to the New England Securities Company for a loan of $600 and offered the land in controversy as security for the loan. The agent of the securities company called attention to the fact that the deed was made from H. P. Davis and wife to J. B. Holland. J. W. Holland told the agent that his initials were originally J. W. B. Holland; that in preparing the deed from Davis to himself the draftsman left out the "W" and made the deed to J. B. Holland, and that subsequently

he had dropped the "B" entirely from his name, and made affidavit to that effect.

J. W. Holland married the mother of J. B. Holland, and she joined with him as his wife in the execution of the mortgage in January, 1907. Subsequently J. W. Holland died, and his widow paid the interest on the loan one year after his death. The notary public taking the acknowledgment to the mortgage testified that Mrs. Holland stated that at the time she understood the meaning of the instrument and acknowledged it of her own free will and accord. J. W. Holland lived on the land from the time he purchased it until his death.

The mother of J. B. Holland testified that she had heard J. W. Holland say that the lands belonged to his son, J. B., and that her husband had paid the taxes in the name of J. B. Holland.

The chancellor found the issue in favor of the defendants, and the complaint of the plaintiff was dismissed for want of equity; and on the cross-complaint it was decreed that the title be quieted and confirmed in the purchaser at the mortgage foreclosure sale against the claims of J. B. Holland, his mother, Hettie Wood, and Rex Baker, the administrator of the estate of J. W. Holland, deceased.

The case is here on appeal.

*J. T. Coston,* for appellant.

1. The court erred in reforming the deed, as there is no evidence whatever to justify the court in so doing. The evidence of W. F. Rhea was incompetent, and the declarations of J. W. Holland were *ex parte* and self-serving, not part of the *res gestae* and incompetent; and if competent they were wholly insufficient to offset the positive testimony of Hettie Wood and overturn the deed itself. 2 Wigmore on Ev., § 1481.

2. The declarations of J. W. Holland were also *incompetent,* as they were made while a controversy and litigation was pending and self-serving. 2 Wigmore on Ev., §§ 1482-3.

3. The evidence of the boy's mother, Mrs. Wood, was competent, because such acts, statements and declarations were *against* the interest of J. W. Holland. 131 S. W. 671; 146 *Id.* 502. A mere affidavit is inadmissible. 2 Wigmore on Ev., § 1384; 42 Ark. 357; 9 Ore. 315. See, also, 17 Conn. 400; 90 Mass. 100; 6 Mich. 14. It was hearsay and not part of the *res gestae.* 7 So. Rep. 747.

4. It was error to admit Robert A. Campbell's testimony. It was self-serving and incompetent. See 58 S. W. 8. To the same effect are 87 Mo. App. 219; 2 So. Rep. 30; 51 Mass. 53; 39 S. W. 187; 85 *Id.* 215; 42 S. E. 887; 31 *Id.* 734; 37 So. Rep. 405; 54 S. W. 609; 67 *Id.* 735; 77 *Id.* 135; 72 N. W. 423.

5. The evidence is insufficient, even if competent. The evidence of mistake must be clear, unequivocal and decisive. 77 S. W. 53; 101 *Id.* 724; 131 *Id.* 452; 219 *Id.* 328.

*Buck & Lasley,* for appellees.

The only witness for appellant was the mother, Hettie Wood, and she was an interested witness, living on the land and anxious to defeat the N. E. Security Company's deed. The burden was on appellant, and he has failed. 20 Cyc. 1219, 1195; 66 Ark. 299. The testimony of Rhea as to the declarations of J. W. Holland were clearly competent and sustain the decree.

HART, J. (after stating the facts). The decree of the chancellor was correct. It is true, as contended by counsel for appellant, that where a grantor executes a deed in the absence of the grantee and has it recorded, this amounts to a delivery where the record shows that the acceptance of the deed would be to the advantage of the donee. *Graham* v. *Suddeth,* 97 Ark. 283.

There is nothing in the present record, however, that tends to show that the deed was to the advantage of the minor, even if it could be said that the record shows that it was intended to be made to the minor.

The deed was made in October, 1899, when the infant was only a few weeks old. The deed was for forty acres of land and recited a consideration of $1,000. One hundred and sixty dollars of it were paid in cash, and the balance was payable in yearly installments for each succeeding year until the 15th day of November, 1905.

There is nothing in the record to show whether it would be for the benefit of the minor or not to have had the land conveyed to him. Moreover, it appears from the recitals of the deed that the cash payment was made by the grantee and that the deferred payments were evidenced by promissory notes to be signed by the grantee. J. B. Holland was an infant at that time, and, of course, could not have made the cash payment and could not have signed the notes for the deferred payments.

It is fairly inferable from what happened at the time, that J. W. Holland purchased the land for himself, and by mistake the deed was made to J. B. Holland. It was shown that the full initials of J. W. Holland were J. W. B. Holland. J. W. Holland went into possession of the land himself and lived there until he died. In the latter part of 1906 or the first part of 1907 he mortgaged the land to secure a loan of $600 made to him by the New England Securities Company. His wife joined him in the execution of this deed. All these facts and circumstances tend to show that J. W. Holland bought the land for himself, and that by mistake the deed was made in the name of J. B. Holland, instead of J. W. Holland. The whole substance of the transaction and the conduct of J. W. Holland and his wife until he died show that he purchased the land for himself. The only contradiction of it is the testimony of his widow to the effect that her husband always spoke of the land as belonging to his infant son, J. B. Holland. Her testimony, in this respect, is contradicted by her own action in the premises. When her husband desired to mortgage the land to secure a loan, she readily signed the deed as his wife and relinquished her dower in the premises. This act indicated that she regarded the land as belonging to her husband at that time. She knew that her husband paid

the interest on the loan, and she paid the interest thereon for the first year after his death. Her conduct then tends to show that she regarded the land as belonging to' her husband and is entitled to more weight than her bald testimony to the contrary after her husband's death.

It follows that the decree will be affirmed.