ELLIS *v.* SHUFFIELD.

4-6391                                    152 S. W. 2d 535

Opinion delivered June 16, 1941.

*Alfred Featherston,* for appellant.

*Jas. S. McConnell,* for appellee.

McHANEY, J.  Appellants and appellees are all the heirs-at-law of W. O. Shuffield who died intestate in Howard county on January 20, 1939,—appellants being two daughters, appellee, Argus Shuffield, being an incompetent son, and the other appellees being children and a grandchild of a deceased daughter.  Appellees brought this action to cancel certain deeds to real property and a certain bill of sale to personalty, executed by W. O. Shuffield to appellants, on the grounds that said conveyances had never been delivered and were made under condi-

tions showing conveyances in trust for his use and benefit during his lifetime and for his estate at his death. Prayer was for a cancellation of such conveyances or a holding that they were made in trust for said estate and for partition. The answer was a general denial and a plea of the statute of frauds if appellees claimed an oral agreement of appellants to convey to appellees a share of the property conveyed to them. Trial resulted in a finding and decree for appellees, holding that the deeds and bill of sale were never delivered to appellants in the lifetime of their father, although some of them were placed of record by him; that he purchased certain real property, taking a deed thereto in their names, but that they were never the beneficial owners nor had the possession thereof, and were mere trustees with the naked legal title. Held that appellants and appellees were the owners of said property in effect as tenants in common. Partition was not decreed pending a decision of this case on appeal.

Appellants say there is no evidence to support the court's finding that the deeds and bill of sale were never delivered by W. O. Shuffield to appellants. We cannot agree. The undisputed facts are that the first deed was made on June 22, 1929, at the same time the bill of sale was executed, which ostensibly conveyed one lot in block 4, six lots in block 7, one lot in block 8, two lots in block 10, two in block 13, one in block 14 and one in block 31 of Southwestern Real Estate and Development Addition to Nashville, Arkansas, to appellants, which deed was filed for record by the maker and recorded on July 10, 1929. This deed was not delivered to appellants at that time and, never at all, unless delivered with others and the bill of sale a short time before the grantor's death. Appellants knew nothing of the making or recording of this deed. The maker thereafter retained possession and control of all this property, paid the taxes thereon, collected the rents and exercised all acts of ownership. A house on lot 10, block 7, was insured in their names and was destroyed by fire. The insurance check, payable to them, was indorsed by them and their father collected the money. Appellants say a bundle of deeds, including

this one and the bill of sale, was delivered to them late in December, 1938. It must have been early in January, 1939, as the post card, addressed to Janie Morphew, Pickens, Oklahoma, where she lived, in which she was asked to come to see her father, was postmarked in Nashville December 31, 1938, 5 p. m., and was stamped at Pickens, Oklahoma, January 2, 1939. It must have been delivered to her on or after the latter date. But whatever the exact date, they had a conference with their father on his death bed, at which time he attempted to go over his deeds and papers with them, and we think the trial court was justified in finding there was no delivery at that time because the deeds, bill of sale and all papers were left in his possession where they remained until after his death. They were found in a trunk belonging to Mr. Shuffield by a servant in the home. It is undisputed appellants knew nothing of the bill of sale until after the death of their father. There are other facts and circumstances in this record tending to show that this deed was made to appellants to prevent a former wife from getting part of his estate or to prevent creditors from reaching it, although he died solvent. We think these facts and circumstances were sufficient to overcome the presumption of delivery arising from a recording of the deed. This court has held that "the presumption of delivery arising from a registration of a deed duly acknowledged and recorded can be overcome only by clear and decisive proof that the grantor did not part with the deed; and the mere fact that the grantor retained the deed in his possession is not sufficient to overcome such presumption." *Graham* v. *Suddeth*, 97 Ark. 283, 133 S. W. 1033. See, also, *Holland* v. *Alexander*, 147 Ark. 513, 227 S. W. 778; *Reynolds* v. *Balding*, 183 Ark. 397, 36 S. W. 2d 402. The presumption so created is a rebuttable one and is overcome by clear and decisive evidence of a contrary intent, which we think exists here, or, at least, that the trial court was justified in so holding. Therefore, the deeds to appellants executed by their father failed to pass title for lack of delivery. W. O. Shuffield in his lifetime purchased certain lots and took the title in the name of appellants, and as to this situation we think

the court was justified in holding them trustees of a resulting trust. The same facts with reference to such property existed as above recited in relation to his deeds to them. He bought the property with his money, made the trade with reference to them, handled the property as his own, etc. In *Stacy* v. *Stacy,* 175 Ark. 763, 300 S. W. 437, Judge Wood quoted with approval Mr. Pomeroy's definition of a resulting trust, also quoted in *Bray* v. *Timms,* 162 Ark. 247, 258 S. W. 338, as follows: "Resulting trusts arise where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but the intent, in theory of equity appears or is inferred or assumed from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go with the legal title. In such case a trust results in favor of the person for whom the equitable interest is thus assumed to have been intended, and whom equity deems to be the real owner." It was there held that the purchase by the father for the son, under the circumstances of that case, raised the presumption of an advancement, but that the presumption was overcome by the facts adduced in evidence. It is also well settled that the evidence to establish a resulting trust must be clear, satisfactory and convincing, and we agree with the trial court that as to the property purchased by W. O. Shuffield wherein he had the deeds made by the grantors to appellants, without their knowledge or consent, and without their ever having exercised any acts of ownership over same thereafter, that they became the holders of the naked legal title only, and were trustees of a resulting trust.

Moreover it appears from a preponderance of the evidence, we think, W. O. Shuffield intended that his property be divided equally among his children. A brother of the decedent, who was present at the time appellants say their father delivered to them his deeds and the bill of sale, testified that decedent told them he wanted his property divided among all his children, and that he "never said a word about giving that property to Janie Morphew and Minnie Ellis," appellants. Decedent told numerous people that, after his death, he

wanted his property divided among the heirs, that he did not make a will because the lawyers would get a large part of it, and that he had instructed his grantees how to divide it. Appellants, with some corroboration, say their father told them on December 24, 1938, when he conferred with them about his property and delivered the deeds and papers to them, that it was theirs. But, as has already been shown, by the post marks on the card to Janie Morphew, asking her to come, it could not have happened on that date, and the deeds and papers were not delivered as they were still in the possession of the decedent at his death, and appellants had to get Mary, the cook, to find them after the funeral.

It appears that the probate court had made an order, without notice, holding that appellants were entitled to all the personal property covered by the bill of sale executed in 1929 by their father, but which was never delivered in his lifetime. The court canceled said order of the probate court and appellants argue that this was error. The probate court's order was void as it had no jurisdiction to determine the title to property.

The decree is correct, and is accordingly affirmed.